UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-289-GCM
(3:17-cr-33-GCM-DCK-1)

| | |
|---|---|
| JASON ADAM TOWNSEND, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

### I.  BACKGROUND

Petitioner Jason Adam Townsend ran a company that provided billing and credentialing services to mental health companies and other health providers. (Crim. Case No. 3:17cr33, Doc. No. 13 at ¶ 8: PSR). Essentially, he received information from clients detailing claim information, which he submitted to health care benefit programs, including Medicaid. (Id. at ¶¶ 8-9). Petitioner generally received 5 to 7% of the Medicaid reimbursements for claims he submitted. (Id. at ¶ 12).

Cynthia Harlan[1] worked as a consultant, specializing in the operation of mental health companies and Medicaid reimbursement. (Id. at ¶ 10). She usually required clients of her

---

[1] Harlan proceeded to trial and was convicted of conspiracy to commit health care fraud, three counts of making false statements related to health care matters, and three counts of aggravated identity theft. United States v. Harlan, 714 Fed. App'x 220, 222 (4th Cir. 2017).

1

company to use Petitioner's company as their third-party billers. (Id. at ¶ 11). From 2012 to August 2013, Petitioner conspired with Harlan to defraud Medicaid by misusing beneficiary information to submit claims for mental and behavioral services that were not performed. (Id. at ¶ 7). Harlan would send billing information to Petitioner, who would then frequently submit claims for two to three times the amount of services to Medicaid. (Id. at ¶ 15). Petitioner submitted millions of dollars in false and fraudulent claims, which resulted in providers receiving benefits from Medicaid and, in turn, compensating Petitioner and Harlan for the submission of the fraudulent claims. (Id. at ¶ 17). The amount of loss exceeded $10 million. (Id. at ¶ 19).

On December 14, 2015, a grand jury indicted Petitioner, charging him with five counts of health care fraud in violation of 18 U.S.C. § 1347 and five counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), (2). (Crim. Case No. 3:15cr284, Doc. No. 3: Indictment). Petitioner was later charged, in this action, by a bill of information with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 371. (Crim. Case No. 3:17cr33, Doc. No. 1). Petitioner agreed to plead guilty to the conspiracy charge in exchange for the dismissal of the ten-count indictment. (Id., Doc. No. 3 at ¶¶ 1-2: Plea Agrmt.).

As part of the plea agreement, the parties jointly recommended that the amount of loss known to or reasonably foreseeable by Petitioner was $10.4 million and that the Court should apply a base offense level of six, a 20-level enhancement for the amount of loss, and a three-level enhancement for the offense involving health care fraud of over $3 million. (Id. at ¶ 8). The parties also agreed that either party could seek a departure or variance from the applicable guideline range. (Id.). Petitioner agreed to waive the right to challenge his conviction or sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. (Id. at ¶¶ 19-20).

At the plea hearing, Petitioner affirmed that he had received the Bill of Information and reviewed it with his attorney and that he was guilty of the charge of conspiracy to commit health care fraud. (Id., Doc. No. 32 at 12, 16-17: Plea Tr.). He stated that he understood the charge, that he had discussed the Sentencing Guidelines with his attorney and understood that he could be sentenced higher or lower than the guideline range, and that he would still be bound by his guilty plea even if his sentence was more severe than he expected. (Id. at 12-15). Petitioner testified that he understood and agreed to the terms of his plea agreement, including the recommendation that the amount of loss was approximately $10.4 million, that the adjustment for health care fraud exceeding $3 million applied, and that he was waiving his appellate and post-conviction rights. (Id. at 17-21).

With respect to the factual basis, Petitioner testified that he had read it, understood it, and agreed with it. (Id. at 21-22). Petitioner affirmed that no one had threatened, intimidated, or forced him to plead guilty and that no one had promised him a light sentence to obtain his guilty plea. (Id. at 22). Finally, he testified that he had had sufficient time to discuss possible defenses with his attorney and that he was satisfied with his attorney's services. (Id.). The magistrate judge accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. (Id. at 23-24). The magistrate judge also advised Petitioner that he had fourteen days in which to object to this recommendation or any objection would be deemed waived. (Id. at 24).

A probation officer prepared a presentence report, recommending that Petitioner be sentenced at a total offense level of 26 and a criminal history category of I. (Id., Doc. No. 13 at ¶¶ 37, 45). Although this equated to a guideline range of 63 to 78 months of imprisonment, due to the statutory maximum the guideline range was 60 months. (Id. at ¶ 78). Before sentencing, Petitioner moved for a downward variance, arguing that the amount of loss substantially

overstated the seriousness of the offense because he only received 5 to 7% of the Medicaid reimbursements for the claims he submitted. (Id., Doc. No. 15 at 1-2). He also asserted that courts were increasingly varying below U.S.S.G. § 2B1.1's recommended sentencing range, and he relied on sentencing statistics to argue that a sentence below the guideline range was warranted to avoid sentencing disparities. (Id. at 3-6).

The Government filed a sentencing memorandum recommending a sentence within the guideline range. (Id., Doc. No. 16). The Government noted that Harlan had provided Petitioner with barebones billing spreadsheets that were missing necessary billing information. (Id. at 2). Petitioner then made up the missing information and compounded the fraud by requesting two and three times the amount of false claims that Harlan had requested. (Id.). He also often submitted claims for services that purportedly were rendered months before the date that Harlan had falsely claimed that the services began. (Id.). The Government cited the one-year time frame in which over $10 million in fraudulent charges were submitted and provided information regarding the sentences of other participants in the health care fraud conspiracy, as well as a chart of the amount of Medicaid claims billed and the amount of claims paid, excluding recipients that companies claimed to have serviced. (Id. at 2-3; Doc. No. 16-2).

At sentencing, Petitioner told the Court that he had reviewed the PSR with his attorney. (Id., Doc. No. 33 at 2: Sent. Tr.). Defense counsel argued for a downward variance, contending that the intended loss was significantly higher than the actual loss, that statistical data showed that other offenders had received lower sentences, and that Petitioner was an honorably discharged veteran who was dependent on opioids. (Id. at 3-5). The Government noted that it had inadvertently filed its sentencing memorandum the morning of the sentencing hearing and argued for a within-guideline sentence. (Id. at 5-8). Petitioner allocuted, arguing that he had

4

been doing this type of work since 2004, that he was working with 26 agencies at the time of the offense, and that Harlan was involved with only seven of those agencies. (Id. at 8-9). He argued that this showed that he had not created his company in 2012 in order to do work for Harlan. (Id. at 9). This Court varied downward, noting that the intended loss was far greater than the actual loss, and sentenced Petitioner to 42 months of imprisonment. (See id. at 10-11; Doc. No. 19 at 3: Judgment). The Court also ordered Petitioner to pay $2,709,340.25 in restitution. (Id., Doc. No. 33 at 13).

Petitioner appealed. Although counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), counsel questioned whether Petitioner had received ineffective assistance and whether he should be allowed to withdraw his guilty plea. United States v. Townsend, 723 F. App'x 184, 185 (4th Cir. 2018). Petitioner filed a pro se supplemental brief raising additional issues, including sentencing error, actual innocence, and ineffective assistance. Id. at 185-86. In February 2018, the Fourth Circuit affirmed, holding that this Court did not plainly err in accepting Petitioner's guilty plea, which was "valid and binding," that Petitioner's sentence was reasonable, and that his allegations of ineffective assistance were not properly raised on direct appeal. Id. at 186-87. The Fourth Circuit found that the record did not support his claims that counsel misadvised him regarding the terms of the plea agreement or that the Government breached the plea agreement and the Fourth Circuit denied Petitioner's remaining pro se arguments. Id.

Petitioner filed the pending motion to vacate in June 2018, arguing that he received ineffective assistance of counsel and that the Government engaged in "possible misconduct." (Doc. No. 1 at 4-5). The Government filed its response in opposition on August 7, 2018. (Doc. No. 3).

5

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines, 423 F.2d at 529.

## III. DISCUSSION

**A. Petitioner's Claims of Ineffective Assistance of Counsel.**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance

prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

**1. Petitioner's assertion that his attorney provided ineffective assistance with respect to his guilty plea.**

Petitioner first asserts that his counsel lied to him and that he would not have pleaded guilty if he had competent counsel who understood his case and did not provide bad advice. (Doc. No. 1 at 4, 9). He contends that counsel hired experts and initially wanted to proceed to trial, but then told Petitioner that he would have to settle and take a plea deal, or he would be facing 12 years or more in prison. (Id. at 18, 20-21). Petitioner admits that counsel told him that, by taking a plea deal to conspiracy, he would receive a lower sentence, due to the 60-month statutory maximum. (Id. at 20). Petitioner argues that once he realized that his attorney did not understand why Petitioner was charged with so many counts, when his co-conspirator Harlan was not, he thought that his only choice was to take a plea deal, admit to something he did not

7

do, and take his chance to explain his situation to this Court. (Id. at 18-19). He contends that he told his counsel that he did not have any indication that the patients whose billing Harlan sent to him were fake and that he did not know of the conspiracy. (Id. at 19-20).

In evaluating claims under § 2255, statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). As the Fourth Circuit has made clear, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," and § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false," except in extraordinary circumstances. United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Petitioner's contentions contradict his sworn testimony at the plea hearing that he had sufficient time to discuss any possible defenses with his attorney, that he was satisfied with his attorney's services, and that he was guilty of the offense. These contentions are also inconsistent with Petitioner's testimony that no one had one had forced him to plead guilty and that no one had promised him a light sentence to obtain his guilty plea. Id. Because Petitioner has not shown exceptional circumstances, he cannot overcome his prior testimony and this claim is denied. See Lemaster, 403 F.3d at 221-22.

Even if Petitioner could overcome his sworn testimony, he has not shown that counsel's advice was deficient. Harlan and another co-conspirator were convicted of conspiracy to commit health care fraud seven months before Petitioner's guilty plea. See (United States v. Harlan, No. 3:15cr226 (W.D.N.C. July 14, 2016), Doc. No. 96 at 1: Jury Verdict). Harlan was also convicted of making false statements related to health care matters and aggravated identity theft. Despite these convictions against Petitioner's co-conspirators, Petitioner's counsel was able to negotiate

8

for Petitioner the dismissal of five counts of health care fraud, each of which carried a ten-year statutory maximum, and five counts of aggravated identity theft, each of which carried a two-year consecutive sentence, in exchange for a plea to an offense carrying a five-year statutory maximum. Given the convictions of other people involved in the same offense and the reduction to a five-year cap on the sentence that Petitioner could receive by pleading guilty, Petitioner has not shown that any advice to plead guilty was deficient.

Nor can Petitioner show prejudice. He does not point to any contemporaneous evidence that he wanted to proceed to trial. Cf. Lee v. United States, 137 S. Ct. 1958, 1967 (2017). Nor does he provide any evidence to support his self-serving assertions that, although he was on medication for pain and anxiety and he used tricks "to help save time and cut corners," he never intended to defraud anyone. (Doc. No. 1 at 17). Although he claims that there is evidence that he did not know that patients sent to him by Harlan were fake, he does not address the fact that he fabricated information that was necessary for processing the claims and included dates of service for which no information had been provided. See (Crim. Case No. 3:17cr33, Doc. No. 2 at ¶ 10(e), (h): Factual Basis). Proceeding to trial would not have been objectively reasonable, given the convictions of the others involved in the offense, as well as the possibility of receiving a sentence with a statutory maximum of ten years and consecutive two-year sentences for the aggravate identity theft accounts. See Fugit, 703 F.3d at 260. Accordingly, Petitioner's claim that he received ineffective assistance with respect to his guilty plea is denied.

**2. Petitioner's assertion that his attorney provided ineffective assistance at sentencing.**

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have

9

received a lower sentence. See Royal v. Trombone, 188 F.3d 239, 249 (4th Cir. 1999). In support of his claim of ineffective assistance of counsel at sentencing, Petitioner argues that counsel did not file objections to the PSR, did not allow him to review the PSR until the time for filing objections had passed, did not allow him to keep a copy of the PSR, and did not present mitigating factors that Petitioner wanted counsel to present. (Doc. No. 1 at 4, 25). Specifically, Petitioner argues that he was sentenced based on a loss amount that is significantly higher than the actual loss to Medicaid. (Id. at 21). He asserts that the actual loss amount should have been used and that his attorney had assured him that they could raise this issue at sentencing, but then did not do so. (Id. at 23-24, 26).

Petitioner has not shown that counsel's performance was deficient. First, as to counsel retaining the PSR, pursuant to the standard discovery order, counsel appropriately retained the PSR after allowing Petitioner to review it. As to Petitioner's contention that counsel did not show him the PSR until after the deadline for filing objections had passed, Petitioner concedes that he did review it on the final day for filing objections. See (Doc. No. 1 at 25). In any event, to the extent that Petitioner is claiming that he would have sought to object to the loss amount, because Petitioner had agreed to the amount of loss as part of his plea agreement, counsel was not ineffective for failing to challenge this amount.[2] Had counsel challenged the loss amount to

---

[2] Under the Sentencing Guidelines, the amount of loss is the greater of the actual or the intended loss. U.S.S.G. § 2B1.1, cmt. n.3(A). "Intended loss" is "the pecuniary harm that the defendant purposely sought to inflict," and includes harm that would have been unlikely or impossible, such as where an insurance claim exceeds the amount of insured value. Id. § 3(A)(ii). A court's determination of loss is entitled to deference, and a court only needs to make a reasonable estimate of the loss. Id. n.3(C). Only where loss cannot reasonably be determined should a court use the amount of gain from an offense as the amount of loss. Id. n.3(B). In health care fraud cases, the "aggregate dollar amount of fraudulent bills submitted to the Government health care program [is] prima facie evidence of the amount of the intended loss." U.S.S.G. § 2B1.1, cmt. n.3(F)(viii).

10

which the parties had agreed, this would have jeopardized Petitioner's plea agreement, which had reduced his maximum penalty to five years, as well as his opportunity to receive a three-level reduction for acceptance of responsibility. Rather than doing that, counsel strategically chose to argue at sentencing that the intended loss was significantly higher than the actual loss and that this supported a downward variance. (Crim. Case No. 3:17cr33, Doc. No. 33 at 3-4: Sent. Tr.). Counsel also obtained sentencing data that he argued showed that in similar situations, with higher loss amounts, defendants were getting lower sentences than what Petitioner was facing. (Id. at 4). Counsel's arguments were successful, as this Court varied downward, citing the fact that the intended loss "is far greater than the actual loss." (Id. at 11).

Petitioner also has not shown that he was prejudiced by counsel's performance at sentencing. Counsel was able to get an 18-month downward variance from the 60-month statutory maximum, which was already lower than the guideline range that equated to Petitioner's offense level and criminal history category. Petitioner offers no evidence to show that there is a reasonable probability that this Court would have imposed a lower sentence had his attorney filed objections to the PSR or challenged the loss amount to which Petitioner had agreed as part of his plea agreement. See United States v. Harlan, 714 Fed. App'x 220, 225-26 (4th Cir. 2017) (affirming attribution of $12 million loss to Harlan and over $6.8 million loss to another co-conspirator); United States v. Elshingety, 78 F. App'x 271, 273-74 (4th Cir. 2003) (holding the defendant did not meet his burden to show that the amount of loss in the PSR was inaccurate where he did not provide documentation to support his claim). Accordingly, his claim of ineffective assistance at sentencing is denied.

**B. Petitioner's Claim of "Possible Misconduct" by the Government.**

In his final claim, Petitioner asserts various instances of alleged "misconduct" by the Government. First, he asserts generally that the Government did not honor the plea agreement. This claim is dismissed as vague, conclusory, and without merit. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013). Petitioner states that the "plea agreement details and signed documents appear to be absent," but he does not explain how this would show that the plea agreement was not honored. See (Doc. No. 1 at 5). The plea agreement and its terms are in the record and were discussed in detail during Petitioner's plea hearing. See (Crim. Case No. 3:17cr33, Doc. No. 3 at 17-21). Additionally, Petitioner is barred from raising this issue again because he raised this issue on direct appeal and the Fourth Circuit held that it was without merit. See Townsend, 723 F. App'x at 186; United States v. Linder, 552 F.3d 391, 397 (4th Cir. 2009); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (claims considered on direct review may not be recast "under the guise of collateral attack").

Finally, Petitioner complains that the Government did not file its sentencing memorandum until the day of sentencing, but this does not constitute prosecutorial misconduct. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993) (holding to establish prosecutorial misconduct, a defendant must demonstrate: (1) that the conduct of the prosecutor was improper, and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive him of a fair trial); United States v. Pardo Macias, 378 F. App'x 276, 277 (4th Cir. 2010) (holding government's late filing of objections to the PSR did not breach the plea agreement or constitute prosecutorial misconduct). Although the sentencing memorandum was filed the day of sentencing, the Government did not object to the PSR, merely requested a sentence within the guideline range, and provided the Court with sentencing information for other similarly situated defendants involved in the scheme. See (Crim. Case No. 3:17cr33, Doc. No. 16). Petitioner has

not shown that this conduct improperly deprived him of a fair sentencing hearing or prejudicially affected his substantial rights. Accordingly, this claim is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: October 17, 2018

Graham C. Mullen
United States District Judge